IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

v.                                                                                                                              CR. No. 99-1026 LH

**JESSE MONCLOVA,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court on Defendant's Motion to Dismiss with Prejudice or in the Alternative, Motion for a New Trial (Docket No. 51).  Defendant makes no specific arguments for actual dismissal of this case.  He does however assert two grounds for a new trial.  The first ground is that previously undisclosed evidence has revealed that the prosecution introduced trial testimony that it knew or should have known was perjured.  Defendant's second ground for a new trial is that the Government failed to disclose evidence that was relevant and material to the issue of a witness's credibility, namely an immunity agreement

1

with the Government. The Court, having considered the briefs and arguments of the parties, for the reasons that follow, concludes that Defendant's motion shall be **granted** and that he is hereby granted a new trial on Counts I and III of the Information.

## Discussion

The affirmative duty of the prosecution to disclose evidence favorable to a defendant and the strictures against misrepresentation are discussed extensively by the Supreme Court decision in *Brady v. Maryland*, 373 U.S. 83 (1963). The *Brady* rule is based on the requirement of due process. Its purpose is to ensure that a miscarriage of justice does not occur. The Court has recognized that the prosecutor's role transcends that of an adversary: she "is the representative not of an ordinary party to a controversy, but of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). The prosecutor is required to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. *See Brady*, 373 U.S at 87-88.

## Immunity Agreement Issue– Count I

Defendant has provided to the Court a copy of a September 7, 1999 agreement entered into by Cindy Gates and the United States (Exhibit B to Defendant's Motion)(hereafter "Immunity Agreement"). This Immunity Agreement was not disclosed to Defendant by the Government, but was discovered by defense counsel, post-conviction. The prosecutor in this matter, Tara Neda, was one of the signatories to this agreement. Defendant was tried in January 2000 and was convicted on two counts. Each count charged Defendant with depriving female

inmates at the San Juan County Detention Center ("SJCDC"), under the color of law, of the right to be free from sexual contact, in violation of 18 U.S.C. § 242 (Deprivation of rights under color of law).

The reference line of the Immunity Agreement is:  "RE:  San Juan County Detention Center Investigation".  The first two sentences of this agreement state:

> Your testimony is required before the grand jury in an investigation conducted by the United States.  The information you have provided in interviews concerning correctional officers at the San Juan County Detention Center (SJCDC) includes possible criminal conduct in which you may have been involved.

The agreement indicates that Ms. Gates had "consulted with [her] attorney, Joseph Romero, and he has explained [her] rights and the terms of this agreement." (Immunity Agreement at ¶ 2). The agreement required Ms. Gates to "truthfully and completely disclose everything [she knew] about [her] involvement and the involvement of (SJCDC) Officer Darren Howell and others in drug distribution and drug possession at SJCDC". (*Id.* at ¶ 3).   It required her to "appear and testify truthfully and completely at trial and other court proceedings as requested by the United States Attorney's Office for the District of New Mexico." (*Id*. at ¶ 4).  "In return for [her] truthful and complete cooperation, the United States [agreed] that no information provided by [Ms. Gates] or derived from information provided by [her] during [her] cooperation would be used against [her] in any prosecution of her." (*Id*. at ¶ 5).  It stated that she would "not be prosecuted in the District of New Mexico for [her] participation, if any, in criminal conduct described above." (*Id*. at ¶ 6).

As a preliminary matter, I conclude that my review of the agreement as a whole in light of all the facts and circumstances indicates that the agreement is relevant to Defendant Monclova's

3

case. *See United States v. Irvine*, 756 F.2d 708, 710 (9th Cir. 1985)(immunity agreement is to be read as a whole and given a reasonable interpretation with the words construed to try to carry out the intention of the parties). Paragraph 4 of the agreement says that Ms. Gates will testify at trial and other court proceedings as requested by the U.S. Attorney. There is no language limiting her testimony to the *Howell* case or to drug violations. The references to the SJCDC Investigation in the caption and the first sentence of the agreement also suggest that the agreement is not limited to the *Howell* case. According to the FBI agent's testimony at trial, the initial scope of the investigation was potential sexual assault of inmates. Tr. at 94. Potential drug violations surfaced pursuant to the initial investigation. *Id.* It is reasonable to interpret the agreement as requiring Ms. Gates to testify regarding any aspect of the investigation. Any other interpretation would indicate that subsequent immunity agreements would be necessary as additional defendants or crimes were identified during the course of the investigation. I conclude that the Immunity Agreement applied to and covers the testimony of Ms. Gates in the Monclova matter.

    I note that *Brady* requires disclosure only of evidence that is both favorable to the accused and "material either to guilt or to punishment", irrespective of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. at 87. Impeachment evidence certainly falls within the *Brady* rule. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Trujillo*, 136 F.3d 1388, 1393 (10th Cir. 1998). The Government does not dispute that this type of evidence is "evidence favorable to an accused". A key witness's credibility is an important issue in a case, evidence of any agreement as to future prosecution is relevant to the witness's credibility, and the jury is entitled to know of it. *Giglio*, 405 U.S. at 155. Furthermore, when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting

credibility falls within the general *Brady* rule . *Napue v. Illinois*, 360 U.S. 264 (1959), *quoted in Giglio*, 405 U.S. at 154.  Thus, the disputed issue relevant to the claimed *Brady* violation is whether the suppressed evidence is material.

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  In making the materiality determination, the Court must view the significance of the undisclosed impeachment evidence in relation to the record as a whole to determine whether on the whole, the defendant received a fair trial.  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

In this instance, the victim in Count I of the Information was Cindy Gates. Contrary to assertions of the Government's brief on page 7, Gina Manning was not an eyewitness to any sexual advances of the Defendant alleged in Count I, nor did she testify in this regard. The Government cites the Court to other indirect evidence relating to the issue of guilt of the Defendant, including evidence of other alleged crimes and victims, opportunity for other assaults, and reputation for untruthfulness evidence. The Government contends that this evidence of guilt is overwhelming.

I disagree.  The only *direct* evidence pertaining to Count I came  from Defendant and from Ms Gates.  It was a "he said/she said" situation, where the credibility of these two persons was critical.  This fact heightens the importance of the testimony of Ms. Gates. (Tr. 25-43). I

5

realize that defense counsel cross-examined Ms. Gates on the topic of her criminal record. A brief cross examination was also allowed regarding potential future pecuniary interests in the outcome of this case.

Implicit to the Immunity Agreement are potential motive and bias for the testimony of Ms. Gates. The agreement is the only evidence of a source for this type of motive, i.e., the motive to avoid further incarceration is presumably a strong motive, and presumably stronger than any incentive for financial gain. It is a possible motive that was not otherwise before the jury. Disclosure of this agreement at trial could have raised a doubt as to the credibility of Ms. Gates that did not otherwise exist. Accordingly, impeachment in this manner would not have been cumulative.[1]

Furthermore, there is a meaningful difference between this type of impeachment evidence of motivation, and a vague reference made by Ms. Gates as to a future lawsuit that she might file. Despite the cross examination that was allowed, given the extreme importance of the credibility of Ms. Gates, I conclude that there is a reasonable probability that the undisclosed Immunity Agreement might have swayed the jury into disbelieving Ms. Gates, thereby affecting the verdict on Count I. Evidence of any understanding or agreement as to future prosecution would certainly be relevant to the credibility of Ms. Gates and the jury was entitled to know of it. I have considered this particular piece of evidence and its likely effect on the outcome of a trial, in light of the full context of the weight and credibility of all evidence actually presented at trial. I

---

[1] The Government argues to the contrary, i.e., that evidence of the agreement would have been cumulative. Neither of the two Tenth Circuit cases cited by the Government dealt with undisclosed immunity agreements. In *United States v. Trujillo,* 136 F.3d 1388, 1393 (10th Cir. 1998), the undisclosed evidence was prior inconsistent statements and the jury was well aware of the witness's criminal propensities and motive for testifying (a plea agreement) against the defendant. In *United States v. Page*, 808 F.2d 723, 730 (10th Cir. 1987), the nondisclosed evidence was evidence of an additional arrest.

conclude that the undisclosed immunity agreement was material.  *Bagley*, 473 U.S. at 682.

Finally, I note that during my instructions to the jury, I told them to ask themselves the following question when evaluating the credibility of each witness:  "Did the witness have any relationship with either the Government or the defense?"  Unbeknownst at that juncture to the Court or to the jury, Ms. Gates had a relationship with the Government via the Immunity Agreement.  The withholding of this information prevented the jury from completely or fairly evaluating the credibility of a key witness, indeed the only eyewitness to the crime alleged in Count I.

The discovery order entered in this matter requires that the United States make available all *Brady, Giglio* and Jencks Act materials to the Defendant  (Docket No. 6 at ¶ 6).  Because I have concluded that the Immunity Agreement was material, I also conclude that there was duty by the Government to produce it.  This duty has been violated.  *See United States v. Agurs,* 427 U.S. 97, 108 (1976)(a prosecutor will have violated his constitutional duty of disclosure if his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial).  FED.R.CRIM.P. 33 permits the Court discretion to grant a new trial "if the interest of justice so requires."  Under *Giglio*, 405 U.S. at 154, a new trial is required if material undisclosed information could in any reasonable likelihood have affected the judgment of the jury.  This undisclosed Immunity Agreement undermines my confidence in the guilty verdict in Count I.  In the interests of justice, a new trial on Count I is hereby granted.

**Spillover as to Count III**

When a conviction on one count of an indictment is vacated, the defendant should be

granted a new trial on other counts where evidence for the vacated conviction has a sufficiently prejudicial spillover effect to deprive him of a fair trial on the other counts. *United States v. Aldrich*, 169 F.3d 526, 528 (8th Cir. 1999). Neither Defendant's motion nor the Government's response addresses the issue of whether a new trial, if granted, should include Counts I and III, or only Count I.[2]

Although none of the testimony of Cindy Gates directly related to Count III, and despite the fact that the jury was instructed to consider each count separately (Tr. at 173), the *Aldrich* case suggests that retrial should be on both Counts I and III. Defendant Aldrich was convicted on three counts at trial. Counts I and II were charges of felon in possession of a firearm and ammunition. Count III was a charge of possession of a sawed-off shot gun. The Government presented evidence at trial that Aldrich had previously been convicted of a felony, to support its burden of proof on Counts I and II. After the trial, the Government and Aldrich learned that Aldrich had been issued a "Restoration of Rights" certificate that restored all the rights, privileges and immunities forfeited by his previous felony conviction. Aldrich filed a motion for a new trial arguing that his convictions on the felon in possession counts should be vacated and that the evidence of his prior felony unfairly prejudiced his trial on Count III. The court vacated Aldrich's convictions on Counts I and II but denied a new trial on Count III. The Eighth Circuit disagreed, stating that the evidence of his prior felony conviction had a sufficiently prejudicial spillover effect to deprive him of a fair trial on Count III. Evidence of a prior crime is always prejudicial to a defendant because it diverts the attention of the jury from the question of the defendant's

---

[2]Count II was dismissed during the trial on the Government's motion.

responsibility for the crime charged to the improper issue of his bad character. *Aldrich*, 169 F.3d at 528 (*quoting United States v. James*, 555 F.2d 992, 1000 (D.C. Cir. 1977).

In this case Monclova was convicted on Count I (unlawful touching of Cindy Gates' breasts) and Count III (unlawful touching of Tina Phillips' breasts). Although the testimony of Ms. Gates might be admissible as to Count III under Fed. R. Evid. 413, I conclude that the probative value of her testimony with respect to Count III is substantially outweighed by the danger of unfair prejudice under Rule 403. Many, if not most, people would find evidence of sexual misconduct more inflammatory than evidence that the defendant is a felon as in the *Aldrich* case. "[T]he evidence that [the defendant] is a felon was of the inflammatory sort that may have swayed the jury to convict him of other charges even if the evidence had not supported those charges." *Aldrich*, 169 F.3d at 529 (*quoting United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994).

During the trial I allowed Jeannie Trujillo, to testify that Monclova allegedly intended to rape her but did not actually touch her. (Tr. at 84-89). I performed balancing under Rule 403 in connection with this testimony:

> The question of whether or not it's unfairly prejudicial is, I think, rather straightforward. The incident that occurred is not something very inflammatory. If he had actually raped her or been physically violent with her, there would be a more difficult time with the question that counsel for the defendant raises, that is, of inflaming the jury. That's not the case here.

Tr. at 57. Unlike Jeannie Trujillo, Ms. Gates testified that Monclova forced himself on her, putting his hand up her shirt onto her bare breasts, kissing her on the lips and placing her hand on his penis. This testimony is much more inflammatory than Jeannie Trujillo's testimony that Monclova led her to a room with a make-shift bed but never touched her.

9

I instructed the jury that evidence of an act done at one time or on one occasion is not evidence or proof that the defendant committed the act in this case. (Tr. at 90). Of course no such cautionary instruction was given with respect to the testimony of Ms. Gates. Furthermore, while the testimony of Ms. Gates may be relevant to show opportunity or plan, it is needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. Other witnesses, such as Jeannie Trujillo, Gina Manning, Tina Phillips, Vicky Smith, and Don Stock, testified at trial that Monclova had the opportunity to be alone with the female inmates and/or planned the sexual assaults such that they occurred out of view of the surveillance cameras. I sustained a defense objection to a prosecution witness John Gardner's testimony as cumulative. (Tr. at 160-161). John Gardner was the fourth witness to testify about Monclova being alone with female inmates and to express his opinion about Monclova's reputation.

In conclusion, in light of these factors and reasons, I conclude that the conviction under Count III, Tina Phillips conviction, was partially based on improper evidence. I further conclude that the potential spillover effect as discussed in *Aldrich* is too strong a possibility to allow the conviction for this Count to stand. Accordingly, it is appropriate to grant a new trial on Count III also.

**<u>Perjury Issue</u>**

Defendant contends that United States Assistant Attorney Tara Neda suborned perjury during the testimony of Ms. Gates. The context of this alleged perjury was the issue of whether or not, at the time of trial, Ms. Gates was represented by Attorney Joe Romero. During cross

examination, defense counsel asked whether Mr. Romero represented Ms. Gates. (Tr. at 39). Ms. Gates indicated that "[a]t this point, he's not representing me.". (*Id.*). Defendant argues that Mr. Romero represented Ms. Gates as early as June 11, 1999, and attaches various exhibits as evidence of a relationship between Ms. Gates and Mr. Romero.

The Government responds with an Affidavit by Joe Romero in which he states in Paragraph 10: "I was not representing Ms. Gates in any capacity, formal or informal, in January 2000 or the time that she testified in the federal criminal trial of Jesse Monclova." The affidavit explains what interaction Mr. Romero has had with Ms Gates. It is the Government's position that the testimony of Ms. Gates in this regard was truthful.

The Supreme Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97,103 (1976). The Court is not sufficiently convinced that the testimony of Ms. Gates was false and that it could have affected the judgment of the jury. Given the Court's decision herein to set aside the convictions against Mr. Monclova and retry Counts I and III, it is unnecessary for the Court to analyze this issue in any event.

It does appear that any appearance of unfairness in regard to this testimony of Ms. Gates could have been anticipated and avoided by the Government via more complete disclosure and candor with the Court, as partially discussed above. Counsel for the Government is admonished to bear in mind her responsibility in this respect in the future.

**WHEREFORE,** for the foregoing reasons the Court concludes that Defendant's Motion to Dismiss with Prejudice or in the Alternative, Motion for a New Trial (Docket No. 51) is hereby **granted** and that Defendant is granted a new trial on Counts I and III.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**